**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| PCS Nitrogen, Inc., | ) | |
| | ) | Civ. No.: 2:14-4252-MBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Ross Development Corporation; | ) | |
| Ashley II of Charleston, LLC; | ) | |
| Allwaste Tank Cleaning n/k/a | ) | |
| Qualaservices; and Robin Hood | ) | |
| Container Express n/k/a | ) | |
| Southeastern Container Express, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. Factual and Procedural Background

This case is the latest in a series that have been filed in which the parties have litigated liability for environmental contamination and sought to recover cleanup costs at the Columbia Nitrogen Superfund Site (the "Site") in Charleston, South Carolina. *See* ECF No. 1 at ¶¶ 2-4; *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F. Supp. 2d 431 (D.S.C. 2011). In the original action (the *Ashley II* action), filed in September of 2005, Ashley II of Charleston, LLC ("Ashley II") sued PCS Nitrogen, Inc. ("PCS") under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601, *et seq.* Ashley II sought to recover costs incurred to remediate the Site under CERCLA § 107(a), 42 U.S.C. § 9607(a). PCS filed a third-party complaint and a series of amended third-party complaints seeking contribution from other potentially responsible parties ("PRPs") under CERCLA § 113, 42 U.S.C.

1

§ 9613.

The case was bifurcated into liability and allocation phases by order of the Honorable C. Weston Houck on July 25, 2006. From February 20, 2007 to February 22, 2007, Judge Houck held a bench trial for the liability phase. Judge Houck entered Findings of Fact and Conclusions of Law determining PCS to be the successor-in-interest to a former Site owner, Columbia Nitrogen Corporation ("CNC"). *See Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, No. 2:05-2782, 2007 WL 2893372 (D.S.C. Sept. 28, 2007). The *Ashley II* case was reassigned to the undersigned on January 6, 2009. From October 26, 2009, to November 6, 2009, and continuing from January 19, 2010, to January 27, 2010, the court held a bench trial for the allocation phase. The court entered its Second Amended Order and Opinion on May 27, 2011. *Ashley II*, 791 F. Supp. 2d 431. Relevant to the instant action, the court equitably allocated liability for the contamination among the parties as follows:

- Ross Development Corporation ("Ross") was found to be responsible for forty-five percent (45%)

- PCS was found responsible for thirty percent (30%)

- J. Holcomb Enterprises, L.P., James H. Holcomb, and J. Henry Fair (collectively "Holcomb and Fair") was found responsible for sixteen percent (16%)

- Ashley II was found responsible for five percent (5%)

- Robin Hood Container Express, now known as Qualaservices, ("RHCE") was found to be responsible for one percent (1%)

- Allwaste Tank Cleaning, now known as Southeastern Container Express, LLC ("Allwaste") was found the be responsible for three percent (3%).

*Id.* at 503-04; *see also* ECF No. 1 at ¶¶ 14-16. The court entered money judgments against PCS,

Ross, and RHCE for Ashley II's past response costs and further entered a declaratory judgment for future response costs at the Site in accordance with the equitable allocation of liability provisions of CERCLA § 113(g)(2), 432 U.S.C. § 9613(g)(2). *Ashley II*, 791 F. Supp. 2d at 507.

On July 29, 2014 PCS filed a motion in *Ashley II* seeking leave to file a supplemental complaint. ECF No. 771 (2:05-2782). The proposed supplemental complaint alleged that PCS was now remediating the Site and asked the court to issue judgments in PCS's favor against the other parties for past and future response costs. *Id.* This motion was opposed by the other parties. ECF Nos. 780-84 (2:05-2782). On October 9, 2014, the court entered a text order denying PCS's motion for leave to file a supplemental complaint. ECF No. 791 (2:05-2782). The complaint in this action was thereafter filed by PCS on October 31, 2014, against Ross, Ashley II, Allwaste, and RHCE (collectively "Defendants"). ECF No. 1.

The within complaint outlines "events since judgment was entered" in the *Ashley II* litigation. The Complaint states that the U.S. Environmental Protection Agency ("EPA") issued a Revised Enforcement Action Memorandum on September 8, 2011, containing removal action plans for the Site. *Id.* at ¶ 21. The action plans provide for the removal of contaminated soil and the addition of backfill treated with a "chemical amendment" to address groundwater contamination. *Id.* On December 12, 2013, the EPA issued a Unilateral Administrative Order ("UAO") pursuant to CERCLA § 106(a), 42 U.S.C. § 9606(a), to PCS, Holcombe and Fair,[1] and Ashley II. *Id.* at ¶ 22. PCS asserts that it has undertaken response activities and incurred response costs to comply with the UAO and that it is continuing to incur response costs at the Site. *Id.* at ¶¶ 23-26. PCS asserts three

---

[1] Holcombe and Fair was a party to the *Ashley II* action but is not a party to the instant action.

3

causes of action against Defendants:

    1)      A cost recovery action pursuant to CERCLA § 107(a)(4)(B) and under CERCLA § 107 through an implied right of action;

    2)      A contribution claim pursuant to CERCLA § 113(f)(1); and

    3)      A claim for monetary and declaratory relief for future response costs pursuant to CERCLA § 107, 113(f)(1) and 113(g)(2), and §§ 2201 and 2202 of the Declaratory Judgments Act, 28 U.S.C. § 2201-02.

*Id*. at ¶¶ 30-42. On January 5, 2015, Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. ECF Nos. 20-23. PCS filed a consolidated response in opposition on January 23, 2015. ECF No. 27. Defendants filed replies on February 2, 2015. ECF Nos. 28-30. The court held a hearing on the motions to dismiss on March 18, 2015. ECF No. 34.

## II. Legal Standard for Fed. R. Civ. P. 12(b)(6) Motions

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). Complaints that merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are inadequate. *Twombly*, 550 U.S. at 555.

"Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)

4

(quoting *Ashcroft*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "In addition, although [the court] must view the facts alleged in the light most favorable to the plaintiff, [the court] will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" *Nathan*, 707 F.3d at 455 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). The court must treat factual allegations of the nonmoving party as true. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217-18 (4th Cir. 1994).

PCS argues that the court should consider nothing outside of PCS's complaint when evaluating whether PCS has stated a claim upon which relief can be granted. *See Claterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (when considering motions to dismiss courts should not "reach[] outside the pleadings to make findings of fact."). Ross, however, maintains that the court can consider the UAO, in particular, because PCS relies on the UAO in its complaint. *See Darcangelo v. Verizon Comm'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002). The court considers the UAO to be integral to PCS's complaint and no party has challenged its authenticity. The court will, therefore, consider the UAO in evaluating the merits of the motions to dismiss. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (acknowledging that under a Rule 12(b)(6) motion to dismiss a district court may properly consider documents whose authenticity is not challenged, especially where the document is "integral" to the plaintiff's claim).

Defendants make several arguments as to why PCS has not stated in its complaint a claim upon which relief can be granted. These arguments can be grouped into two broad categories: first, those based on interpretation of CERCLA, and, second, those not related to CERCLA. The court

5

addresses the CERCLA-related arguments first.

### III. CERCLA

The availability of PCS's claims turns on how the provisions of CERCLA apply to the facts of this case. After an introduction to the CERCLA framework governing the court's analysis, the court addresses: (1) whether PCS has a claim under § 107(a); (2) whether PCS has a contribution claim under § 113(f)(1); (3) whether PCS has a claim via an implied right of action under § 107(a); and (4) whether PCS's has a claim for monetary damages for future response costs under CERCLA.

#### A. The CERCLA Framework

CERCLA underpins the claims PCS asserts and also several of the defenses raised by Defendants. The statute itself is a challenging one. *See, e.g.*, *Exxon Corp. v. Hunt,* 475 U.S. 355, 363 (1986) (noting that CERCLA provisions are "not . . . model[s] of legislative draftsmanship," and its statutory language is "at best inartful and at worst redundant"); *W.R. Grace & Co. v. Zotoa Intern., Inc.*, 559 F.3d 85, 88 (2d Cir. 2009) (observing that CERCLA "is known neither for its concinnity nor its brevity"); *Artesian Water Co. v. New Castle County,* 851 F.2d 643, 648 (3d Cir. 1988) ("CERCLA is not a paradigm of clarity or precision. It has been criticized frequently for inartful drafting and numerous ambiguities . . . .").

However, "although many of the provisions remain perplexing," CERCLA's "primary purposes are axiomatic: (1) to encourage the 'timely cleanup of hazardous waste sites;' and (2) to 'plac[e] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition.'" *W.R. Grace*, 559 F.3d at 88-89 (citations omitted); *see also Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009); *Key Tronic Corp. v. United States,* 511 U.S.

6

809, 819 n.13 (1994) ("'CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.'") (quoting *FMC Corp. v. Aero Indus., Inc.,* 998 F.2d 842, 847 (10th Cir. 1993)).

CERCLA provides two main avenues through which a private party bearing environmental cleanup costs may seek to shift liability to other parties.  First, CERCLA § 107(a) lists four broad categories of persons as PRPs,[2] who are by definition liable to other persons for various costs:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for [various costs].

42 U.S.C. §§ 9607(a)(1)-(4); *see also United States v. Atl. Research Corp.*, 551 U.S. 128, 135 n.2 (2007).  The various costs include "any other necessary costs of response incurred by any other person consistent with the national contingency plan."  CERCLA, § 107(a)(4)(B), 42 U.S.C. §

---

[2] This court already determined that Plaintiff and all Defendants in this action are PRPs. *See generally Ashley II*, 791 F. Supp. 2d 431, *aff'd by PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161 (4th Cir. 2013).

9607(a)(4)(B). Liability under § 107(a) is joint and several. *PCS Nitrogen, Inc. v. Ashley II, LLC*, 714 F.3d 161, 168 (4th Cir. 2013); *United States v. Monsanto Co.*, 858 F.2d 160, 171-72 (4th Cir. 1988). The limitations period for § 107(a) claims is governed by § 113(g)(2) which provides, in part, for a six year limitations period for § 107(a) actions brought to recover the costs of remediating a site. § 113(g)(2)(B); 42 U.S.C. § 9613(g)(2)(B).

In addition to § 107(a), CERCLA § 113(f) provides a right of contribution that a PRP remediating a site may assert against other PRPs: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." CERLCA § 113(f)(1), 42 U.S.C. § 9613(f)(1). The limitations period for contribution actions is three years and is governed by § 113(g)(3). § 113(g)(3), 42 U.S.C. § 9613(g)(3).

The United States Supreme Court has twice delimited who may take advantage of these statutory provisions. The Supreme Court first addressed § 113(f) in *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004). In *Cooper Industries*, the Court held that a private party who has not been sued under § 106 or § 107(a) may not obtain contribution under § 113(f)(1). *Id.* at 160-61. The Court explained that CERCLA provided "for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, § 113(f)(1), 113(f)(3)(B)." *Id.* at 163. Relevant to the defenses asserted by Defendants in this case, the Court held that "the natural meaning" of the language of § 113(f)(1) "is that contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Id.* at 166. Because the plaintiff asserting the § 113(f)(1) claim in *Cooper Industries* had never been subject to an action under § 106 or § 107(a), it had no § 113(f)(1) claim. *Id.* at 168. The Court,

8

however, specifically declined to reach the question of whether an administrative order issued by the EPA under § 106, such as the UAO issued to PCS in this case, would qualify as a "civil action under section 9606 . . . or under section 9607(a)" of CERCLA. *Id*. at 168 n.5.

The Supreme Court returned to CERLCA three years later in *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007). The Court resolved a split among the circuits, holding that CERCLA § 107(a) provides a private party, including a PRP, with a cause of action to recover from other PRPs costs incurred in voluntarily cleaning up a contaminated site. *Id*. at 135. Under *Atlantic Research* § 107(a) "permits a PRP to recover only the costs it has 'incurred' in cleaning up a site." *Id*. at 139.

The Fourth Circuit has not yet addressed the respective scope of § 107(a) or § 113(f)—or the relationship between the two—in light of the Supreme Court's decisions in *Cooper Industries* and *Atlantic Research*. With this landscape of statute and precedent in mind, the court now turns to the specific arguments raised by the parties.

### B. PCS's § 107(a) Claim

Defendants assert that PCS is precluded from raising a § 107(a) claim for past response costs for two reasons: (1) PCS is not entitled to relief under CERCLA § 107(a) because the response costs are being incurred under a UAO and are not, therefore, voluntary, and (2) PCS is not entitled to bring simultaneously both a § 107(a) cost recovery action and a § 113(f) claim for contribution. The court addresses each argument in turn.

*1. Recoverability of Involuntarily Incurred Response Costs under CERCLA § 107(a)*

Ross and RHCE argue that PCS cannot recover its response costs under § 107(a) because the costs are not incurred voluntarily, but rather under an UAO.[3] ECF No. 21-1 at 4-5 (Ross); No. 20-1 at 6 (RHCE). In support of their argument, Ross and RHCE cite to *Atlantic Research*, several decisions of the Second Circuit—*Consolidated Edison Co. of New York, Inc. V. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005) and *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010)—and a decision of the Third Circuit, *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204 (3d Cir. 2010).[4]

The Supreme Court declined to reach a question of key importance to this case, namely whether costs incurred *involuntarily* can be recovered under § 107(a):

> [W]e recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a) or both.

*Atl. Research Corp.*, 551 U.S. at 139 n.6. Although the Supreme Court held that voluntarily incurred costs were recoverable under § 107(a), the Court specifically reserved the issue of whether

---

[3] PCS attempts to argue that the UAO does not compel compliance because Ashley II is refusing to remediate the Site in accordance with the UAO, and it has not yet been forced by the EPA to do otherwise. ECF No. 27 at 12. The UAO is, however, clearly coercive. It includes a paragraph entitled "Penalties for Noncompliance" which provides that PCS and the other parties may face civil penalties of up to $37,500 per day and/or that the EPA may seek judicial enforcement of the order. *See* ECF No. 21-2 at 16 (EPA UAO).

[4] Ross also cites *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924 (9th Cir. 2008), for the proposition that only voluntarily incurred costs may be recovered under § 107(a). While the Ninth Circuit did summarize the holding of *Atlantic Research* as "a PRP . . . that incurs costs voluntarily, without having been subject to an action under § 106 or § 107, may bring a suit for recovery of its costs under § 107(a)," the Ninth Circuit never addressed the issue of whether *only* voluntary costs could be recovered to the exclusion of involuntarily incurred costs. *See Kotrous*, 523 F.3d at 933.

compelled, or involuntary, costs may also be recoverable under § 107(a). Thus, as an initial matter, the Supreme Court made clear that *Atlantic Research* does not stand for the proposition that *only* voluntarily incurred costs can be recovered under § 107(a).

Further, the cited cases from the Second Circuit are not as supportive of the proposition as Defendants maintain. For example, in a case decided before *Atlantic Research*, the Second Circuit addressed the issue of whether a PRP could use § 107(a) to recover the costs of response it voluntarily incurred. *Consolidated Edison*, 423 F.3d 90. In holding that § 107(a) allowed PRPs to recover from other PRPs and that CERCLA did not require that the "party seeking necessary costs of response be innocent of wrongdoing," 423 F.3d at 100, the Second Circuit foreshadowed the holding of the U.S. Supreme Court two years later in *Atlantic Research*. 551 U.S. at 136 ("the plain language . . . authorizes cost-recovery actions by any private party, including PRPs."). Contrary to Defendant's assertion, *Consolidated Edison* did not resolve the voluntary/involuntary issue, but merely held open the possibility that: "It *may* be that when a party expends funds for cleanup solely due to the imposition of liability under an administrative or court order or final judgment, it has not in fact, incurred necessary costs of response within the meaning of section 107(a)." 423 F.3d at 101 (emphasis added).

The Second Circuit subsequently resolved the question of whether involuntarily incurred costs were recoverable under § 107(a) in *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (2d Cir. 2009). In that case, a PRP sought to recover costs for remediation it performed itself pursuant to a consent decree it entered into with New York's state environmental regulator. *W.R. Grace*, 559 F.3d at 92. The defendant in that case argued that "because [plaintiff] was compelled to incur costs pursuant to an administrative order" the plaintiff had not incurred response costs within

11

the meaning of § 107(a), and thus could not seek cost recovery. *Id*. at 91. The Second Circuit

rejected that argument:

> Under the plain language of the statute, the fact that a party enters into
> a consent order before beginning remediation is of no legal
> significance with respect to whether or not the party has incurred
> response costs as required under section 107(a) . . . . In the same
> manner that section 107(a) is not limited solely to 'innocent' parties,
> section 107(a) does not specify that only parties who 'voluntarily'
> remediate a site have a cause of action.

*Id*. at 92. Because the plaintiff PRP in *W.R. Grace* was itself actually incurring remediation costs,

and not merely paying a state agency or other PRP for the costs, the Second Circuit concluded that

it had an available cause of action under § 107(a) notwithstanding that it was compelled to perform

the response under the terms of a consent decree.[5] *But see Morrison Enters., LLC v. Dravo Corp.*,

638 F.3d 594, 604 (8th Cir. 2011) (relying on *Atlantic Research* to conclude that response costs

incurred pursuant to an administrative order containing penalties for failure to comply were not

incurred voluntarily and could not, therefore, form the basis of a § 107(a) claim).

    The court finds the reasoning of the Second Circuit in *W.R. Grace* persuasive. Nowhere does

the statutory language of § 107(a) limit the cause of action only to voluntarily incurred response

costs. § 107(a), 42 U.S.C. 9607(a). The Supreme Court's *Atlantic Research* decision nowhere

prohibits the recovery of involuntarily incurred response costs under § 107(a). This court concludes

---

[5] RHCE also cites to *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112
(2d Cir. 2010), for the proposition that only voluntarily incurred response costs are
recoverable in an action under § 107. ECF No. 20-1 at 6. Although the Second Circuit did
observe that "Section 107(a) claims are brought by . . . PRPs who incur CERCLA cleanup
costs without judicial or administrative intervention," *Niagara Mohawk*, 596 F.3d at 127,
the court hedged that broad statement in a footnote. *Id*. at 127 n.17. Just as the Supreme
Court declined to reach the issue, the Second Circuit "similarly [did] not decide whether a §
107(a) action could be pursued by a PRP that incurs cleanup costs after engaging with the
federal or a state government, but is not released from any CERCLA liability." *Id*.

that involuntarily incurred costs are recoverable by a PRP proceeding under § 107(a). This conclusion advances the purposes of CERCLA to "encourage the timely cleanup of hazardous waste sites." *W.R. Grace*, 559 F.3d at 88-89 (quotations and citations omitted).  The adoption of a "voluntariness rule" would penalize PRPs who enter into consent orders or other arrangements with government environmental regulators and incur compelled cleanup costs, but who may not have a cause of action for contribution under § 113.  To allow PRPs engaging with government authorities a § 107 claim for involuntarily incurred response costs encourages prompt action by PRPs and may prevent the "further contamination and greater expenses" caused by the delay when a PRP postpones action until it is sued under CERCLA.  *See id*. at 95; *see also United States v. Taylor*, 909 F. Supp. 355, 364 (M.D.N.C. 1999) ("To the extent that a private party is compelled to clean up under a Section 106 order issued by the government, the private party should also be able to bring a Section 107 action . . . . It is difficult to understand why being the target or victim of such a draconian order should disqualify one from seeking out others who are also liable.  Such parties play a vital role in achieving the important goals of CERCLA.") (citations omitted).  Therefore, to the extent that the costs incurred by PCS at the Site are involuntarily incurred, the fact of their involuntariness alone is insufficient to preclude PCS's cost-recovery claim under § 107(a).

### 2. Availability of Concurrent Relief under both § 107(a) and § 113(f)

Defendants argue that a party cannot have simultaneous claims under both CERCLA's § 107(a) cost recovery provision and its § 113(f) contribution provision.  *See* ECF No. 22-1 at 11-13. This court is not the first to "attempt to chart the contours of liability" under §§ 107 and 113 of CERCLA. *Niagara Mohawk,* 596 F.3d at 117-18.  The instant action "implicates the still developing distinctions between liability under § 107(a) and § 113(f)" of CERCLA.  *Agere*, 602 F.3d at 210.

"[N]avigating the interplay between § 107(a) and § 113(f) remains a deeply difficult task." *Id.* at 218.

Although the Supreme Court has not directly addressed the concurrent availability of § 107(a) and § 113(f)(1) causes of action, the Court provided the following guidance in *Cooper Industries*:

> In *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), we observed that §§ 107 and 113 created "similar and somewhat overlapping" remedies. *Id.* at 816. The cost recovery remedy of § 107(a)(4)(B) and the contribution remedy of § 113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct.

*Cooper Indus.*, 543 U.S. at 163 n.4.

The parties also directed the court to several cases in which the courts of appeals have addressed the availability of a § 107(a) claim where a party also has a contribution claim under § 113(f). *See, e.g.*, *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 767 (6th Cir. 2014) (holding that "a PRP, which has entered into an administrative settlement with the government, thereby having met a statutory trigger for filing a contribution action, can bring only a § 113(f)(3)(B) action for contribution—not a § 107(a)(4)(B) cost-recovery action"); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236-37 (11th Cir. 2012) (holding that a PRP could not assert a § 107(a) claim if it possessed a § 113(f)(3)(B) contribution claim); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594 (8th Cir. 2011) ("§ 113 provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under § 106 or 107."); *Niagara Mohawk*, 596 F.3d at 128 (2d Cir. 2010) (holding that where a PRP's claims fell within the more specific requirements of § 113(f)(3)(B) and Congress apparently amended CERCLA to provide for such claims in § 113, allowing the PRP to proceed under § 107(a) where it had a valid claim under

14

§ 113(f)(3)(B) would "nullify the . . . amendment and abrogate the requirements Congress placed on contribution claims under § 113"); *Agere Sys., Inc.*, 602 F.3d at 229 (3d Cir. 2010) (holding that plaintiffs "who, if permitted to bring a § 107(a) claim, would be shielded from contribution counterclaims under § 113(f)(2) do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit").

These cases, however, are of limited use in evaluating the availability to PCS of a § 113(f)(1) claim because these cases all dealt with the peculiarities of a contribution claim brought pursuant to § 113(f)(3)(B).[6] In a typical CERCLA action, the joint and several liability provided for by § 107(a) would be mitigated by the equitable apportionment required by the § 113(f) counterclaim a defendant in a § 107(a) action would be entitled to bring. *Atl. Research*, 551 U.S. at 140 (noting that "any fear that PRPs will eschew equitable apportionment under § 113(f) in favor of joint and several liability under § 107(a) is mitigated by the fact that a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action").

A § 113(f)(3)(B) claim—unlike a § 113(f)(1) claim—must be considered in relation to § 113(f)(2). Section 113(f)(2) provides that: "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." § 113(f)(2), 42 U.S.C. § 9613(f)(2). This provision shields settling PRPs from contribution counterclaims brought by non-settling PRPs. To allow these shielded PRPs to bring a § 107(a) claim asserting joint and several liability while

---

[6] Section 113(f)(3)(B) provides: "A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in [§ 113(f)(2)]." § 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B).

being themselves protected from any § 113(f) contribution counterclaims by § 113(f)(2) would allow the settling PRPs to recover one-hundred percent of their own costs "even though they themselves are actually responsible for . . . a . . . portion of the contamination" at a site. *Agere*, 602 F.3d at 228. Such a result is obviously inequitable and contrary to the purposes and design of CERCLA. The courts to address the issue have uniformly held that a party may not bring both a § 107(a) claim and a § 113(f)(3)(B) claim. *See, e.g.*, *Hobart Corp.*, 758 F.3d at 767; *Solutia, Inc.*, 672 F.3d at 1236-37; *Niagara Mohawk*, 596 F.3d at 128; *Agere*, 602 F.3d at 229.

Here, however, PCS does not bring a § 113(f)(3)(B) claim against Defendants, nor could it. Unlike a consent decree or other settlement, the UAO in this case does not resolve liability. The UAO states: "Nothing in this Order shall constitute a satisfaction of or release from any claim or cause of action against the Respondents or any person not a party to this Order, for any liability such person may have under CERCLA . . . including but not limited to any claims of the United States for costs, damages, and interest under Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a) and 6607(a)." ECF No. 21-2 at 17. The parties agree that the UAO is not a settlement under § 113(f)(2). *See* ECF No. 36 at 8:15-21; 14:3-11 (Mot. to Dismiss Hr'g Tr.). Because the UAO does nothing to "resolve" PCS's liability in whole or in part, it is not a settlement entitling PCS to protection under § 113(f)(2) from contribution counterclaims. The court is not, therefore, faced with the situation addressed by the courts of appeals in the decisions cited above where a PRP seeks to impose joint and several liability on other PRPs via § 107(a) while being itself shielded from contribution counterclaims by § 113(f)(2). The equitable logic underpinning *Agere* and the other decisions prohibiting a § 107(a) claim where a PRP also has a § 113(f)(3)(B) claim is simply inapposite to this case.

16

The court finds itself in a situation similar to, albeit not exactly the same as, that imagined by the Supreme Court in *Atlantic Research* footnote 6, i.e., one where "the PRP does not incur costs voluntarily but does not reimburse the costs of another party." *Atl. Research*, 551 U.S. at 139 n.6. Those courts which have explicitly considered the question left open in *Atlantic Research* have done so only in the context of a PRP operating subject to an "administrative or judicially approved settlement" as referenced in § 113(f)(2). The Sixth Circuit, however, articulated a more sweeping rule: that the remedies provided by § 107 and § 113 are entirely separate and that no PRP may proceed under both provisions.

In *Hobart Corp. v. Waste Management. of Ohio*, *Inc.*, the Sixth Circuit not only concluded that "[s]ections 107(a)(4)(B) and 113(f)(3)(B) provide mutually exclusive remedies," 758 F.3d at 766, but also went on to hold in general terms that if a PRP meets any one of § 113's "statutory triggers" then a PRP "must proceed under § 113(f)" and not under § 107(a).[7] 758 F.3d at 767. The *Hobart* court's rationale for this conclusion is cogent and bears quotation at length:

> CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) if they meet one of that section's statutory triggers. Section 107(a) sets out a PRP's liability, which the Supreme Court has interpreted to include liability to another PRP for response costs incurred by that PRP. *Atl. Research,* 551 U.S. at 135–37. Given this existing liability, the Court has inferred a cause of action, allowing any liable PRP to recover costs incurred. *Id.* Section 113(f), in contrast, is an explicit authorization for certain PRPs to file an action for contribution. *See Cooper Indus.,* 543 U.S. at 165–66. In *Cooper*

---

[7] The same rule arguably also applies in the Eleventh Circuit. In *Solutia, Inc.* the Eleventh Circuit had to "decide whether a party who has a claim under § 113(f) for cleanup costs may also have a claim under § 107(a) for those same costs." 672 F.3d at 1236. The *Solutia* court concluded that the plaintiff PRP had only a § 113(f) remedy and denied "the availability of a § 107(a) remedy under these circumstances. . . ." *Id.* at 1237. As in the other cases thus far discussed, the plaintiff PRP in *Solutia* was under a judicially approved consent decree. *Id.* at 1233-34.

17

> *Industries,* the Court held that a PRP must demonstrate that certain preconditions were met before proceeding under § 113(f). *Id.* If § 113(f)'s enabling language is to have bite, though, it must also mean that a PRP, eligible to bring a contribution action, can bring only a contribution action. Given the choice, a rational PRP would prefer to file an action under § 107(a)(4)(B) in every case. Section 107(a)(4)(B) likely provides a broader avenue for recovery . . . and has a longer limitations period than § 113(f), *see* § 113(g)(2)-(3). There would be no reason to limit § 113(f)'s availability if PRPs have § 107(a)(4)(B) as a fall-back option, and we generally do not interpret congressional enactments to render certain parts of these enactments superfluous. *See, e.g., Ransom v. FIA Card Servs., N.A.,* 562 U.S. 61[, 70] (2011). Therefore, it is sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a).

*Id.* (citations and quotations in the original). This court agrees that the text and structure of CERCLA, including the more specific "statutory triggers" of § 113 and the different limitations periods, indicate that Congress provided the § 113 right to contribution only to a sub-set of PRPs. If a PRP meets one of the requirements for suit under § 113, then it must proceed under that section rather than under § 107(a). This reading of the statute best gives effect to the Supreme Court's admonition that § 107(a) and § 113(f) provide "clearly distinct" remedies. *Cooper Indus.*, 543 U.S. at 163 n.4. Therefore, if PCS has met one of the statutory triggers for a § 113 action, then PCS may proceed under only § 113 and not under § 107(a).

### C. PCS's § 113(f)(1) Claim

Section 113(f)(1) permits "any person" to seek contribution from any other person who is liable or potentially liable under § 107(a), but only "during or following any civil action" under § 106 or § 107(a). Ross and RHCE argue that the UAO in this case is not a "civil action" under § 106 or § 107(a) and, therefore, cannot give rise to a claim for contribution under § 113(f)(1). As noted

above, the Supreme Court expressly declined to reach the issue of "whether [an administrative order under § 106] would qualify as a 'civil action under § 9606 . . . . or 9607(a)' of CERCLA" in *Cooper Industries*. 543 U.S. at 168 n.5. Section 107(a) allows the government, PRPs, and innocent private parties to sue other PRPs for certain defined response costs. § 107(a)(1)-(4), 42 U.S.C. § 9607(a)(1)-(4). Section 106 allows the government to petition federal district courts to "secure such relief as may be necessary to abate" the danger of release of hazardous substances from a site, presumably through the use of injunctions. § 106(a), 42 U.S.C. § 9606(a). In addition, § 106(a) also permits the President to issue "such orders as may be necessary to protect public health and welfare and the environment." *Id*.

Several district courts have concluded that a UAO of the type issued to PCS is not a "civil action" for the purposes of § 113(f)(1). *Emhart Industries, Inc. v. New England Container Co., Inc.*, 478 F. Supp. 2d 199, 203 (D.R.I. 2007) (holding that § 113(f)(1) relief is unavailable for parties who are "merely subject to administrative orders, as opposed to final consent decrees, judgments, or apportionments of liability"); *Raytheon Aircraft Co. v. United States*, 435 F. Supp. 2d 1136, 1142-43 (D. Kan. 2006) (concluding that a unilateral administrative order is not a "civil action" for the purposes of § 113(f)(1)); *Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F. Supp. 2d 1079, (S.D. Ill. 2005) (same) (citing Fed. R. Civ. P. 3); *Blue Tee Corp. v. ASARCO, Inc.*, 2005 WL 1532955 at *3-4 (W.D. Mo. June 27, 2005) (same); *United States v. Taylor*, 909 F. Supp. 355, 365 (M.D.N.C. 1995) ("A PRP which conducts an environmental cleanup will not necessarily have suffered a judgment or court approved settlement and, thus cannot bring a contribution action—and this includes one subjected to a Section 106 administrative order."). At least one district court, however, considered a UAO to be a "civil action" under § 113(f)(1). *Carrier Corp. v. Piper*, 460 F.

Supp. 827, 840-41 (W.D. Tenn. 2006). The district court in *Carrier* reasoned that "in terms of the burden it places on a party, a UAO is similar to a judgment issued pursuant to a court proceeding." *Id*. at 841. Thus, the court in that case considered a UAO a sufficient predicate to trigger § 113(f) contribution rights. *Id*.

This court must now also resolve the issue left open by the Supreme Court in *Cooper Industries*, i.e., whether an administrative order under § 106 qualifies as a civil action under § 106 or § 107 of CERCLA. 543 U.S. at 168 n.5. The court concludes that it does. The UAO in this case is denominated a "proceeding under Section 106(a)" of CERCLA. ECF No. 21-2 at 2. The UAO imposes significant fines for noncompliance—up to $37,500 per violation per day—and subjects a breaching party to punitive damages in some circumstances. *Id*. at 16; *see also* § 106(b)(1), 42 U.S.C. 9606(b)(1). The UAO also provides for continued EPA oversight of the remediation process. ECF No. 21-2 at 16. There are unquestionable similarities between the effect of the UAO and that of a civil action in terms of coercing a party to undertake remedial actions. Therefore, the court concludes that a § 106 administrative order of the type issued to PCS in this case is a type of "civil action" under § 106 which gives rise to a contribution claim under § 113(f)(1). In addition, it is not contested that PCS has already been sued under § 107(a). *See Ashley II*, 791 F. Supp. 2d 431. Even if the UAO were not a "civil action" for § 113(f)(1) contribution purposes, PCS has nonetheless met one of the statutory triggers for a § 113(f)(1) claim because it brings the instant action following a civil action under § 107(a), and, indeed, brings it while already subject to a declaratory judgment issued pursuant to § 113(g)(2). *See id*.

Because PCS has met one of the statutory triggers entitling it to bring a § 113(f) contribution claim, it is not entitled also to bring a § 107(a) claim.

### D. PCS's Implied Right of Action under § 107(a)

PCS also seeks to recover its past response costs via an implied right of action under § 107(a). ECF No. 1 at ¶ 36.  In *Cooper Industries*, the Supreme Court declined to "decide . . . whether any judicially implied right of contribution survived" the amendments to CERCLA which created the § 113 right to contribution.  543 U.S. at 171.  An implied right of action for contribution has not been recognized in this Circuit, and prior to *Cooper Industries* was affirmatively disallowed.  *See Pneumo Abex Corp. v. High Point, Thomasville and Denton R. Co.,* 142 F.3d 769, 776 (4th Cir. 1998).  The district courts in this Circuit to have considered the existence of an implied right to contribution under § 107(a) have concluded that one does not exist.  *R.E. Goodson Constr. Co. v. Int'l Paper Co.*, No. C/A 4:02-4184-RBH, 2005 WL 2614927 at *6 (D.S.C. Oct. 13, 2005); *Mercury Mall Assocs., Inc. v. Nick's Market, Inc.*, 368 F. Supp. 2d 513, 520 (E.D. Va. 2005).  This court concurs.  "Until Congress explicitly creates one, or until the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court unequivocally holds that [§ 107(a), 42 U.S.C.] § 9607(a) implicitly provides for a contribution suit as a matter of *federal* common law, this Court will not unilaterally divine one."  *Mercury Mall*, 368 F. Supp. 2d at 52 (emphasis in the original).  PCS's claim for contribution under an implied right of action pursuant to § 107(a) is dismissed.

### E. Availability of Monetary Relief for Future Response Costs

In its third claim for relief, PCS seeks an award of monetary damages for future response costs under both § 107 and § 113. ECF No 1 at ¶ 42.  Defendants argue that CERCLA does not permit the entry of a money judgment for future response costs.

Although PCS is not entitled to proceed under § 107(a), it is nevertheless clear that a money judgment for future response costs is prohibited in a § 107(a) action.  *Gussack Realty Co. v. Xerox*

21

*Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) (holding that a monetary award for future response costs in an action under § 107(a) provided a remedy not available under CERCLA because "[t]he proper remedy for future response costs is not a present lump-sum payment of anticipated expenses but instead a declaratory judgment award dividing future response costs among responsible parties."); *Stanton Road Assocs. v. Lohrey Enter.*, 984 F.2d 1015, 1021 (9th Cir. 1993) *rev'd on other grounds by Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) (holding that "the award of monetary damages . . . to fund a future clean-up of . . . property violate[s] CERCLA" because § 113(g)(2) provides that under § 107(a) the remedy for future response costs is a declaratory judgment).  The language of § 113(g)(2) provides in relevant part: "[I]n . . . [a § 107(a)] action . . . the court *shall enter* a declaratory judgment on liability for response costs or damages . . . ." § 113(g)(2) (emphasis added).  Like the other courts to have considered the question, this court concludes that the language of § 113(g)(2) provides the exclusive remedy for securing future response costs under § 107(a).

PCS concedes that it is not entitled to monetary relief for future response costs on a § 107(a) claim, ECF No. 27 at 19; however, PCS contends that a monetary award for future response costs is available for actions for contribution commenced pursuant to § 113(f)(1).  *Id.*  Three circuits have upheld a district court's award of monetary damages for future response costs under a § 113(f)(1) contribution claim as being within the district court's discretion.  *Action Mfg., Co., Inc. v. Simon Wrecking Co., Inc.*, 287 F. App'x 171, 176 (3d Cir. 2008) (unpublished) ("In contribution cases, the Court has the power to fashion remedies based on equitable considerations . . . Thus, the District Court did not abuse its discretion in awarding monetary relief [for future response costs] in this case."); *PSR Corp. v. Commercial Metal Co.*, 496 F.3d 552 (6th Cir. 2007) (permitting a contribution claim for costs that included $150,000 in future response costs); *Am. Cyanamid Co. v.*

*Capuano*, 381 F.3d 6, 26 (1st Cir. 2004) (finding that "the district court acted consistent with CERCLA's goals by entering a monetary judgment before the remediation was completed" where the court issued a monetary judgment for estimated future response costs in accordance with its equitable apportionment of liability).  Although it appears to be a somewhat rare remedy, the court concludes that monetary relief for future response costs may be available to PCS as part of its § 113(f)(1) claim.

### IV. *Res Judicata*

The primary argument Allwaste and RHCE make in support of their motions to dismiss is that PCS's claims are barred by *res judicata*. ECF No. 20-1 at 4-5 (RHCE); ECF No. 22-1 at 7-11 (Allwaste).  "There are three elements necessary to trigger claim preclusion by res judicata: (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990).  Defendants argue that the § 107(a) claims brought by PCS were dismissed in the *Ashley II* litigation and that the § 113(f) claim raised by PCS has already been resolved on the merits. *See generally Ashley II*, 791 F. Supp. 2d 431; *see also, e.g.*, ECF No. 195 at 11 (2:05-2782); ECF No. 561 at 2 n.1 (2:05-2782).  Because the court determined that PCS does not have a § 107(a) claim, the court does not address whether such a claim would be barred by *res judicata*.  The court considers only whether PCS's § 113(f)(1) claim is so barred.

Allwaste relies, in particular, on the opinion of the Fourth Circuit in *Beazer East, Inc. v. U.S. Navy*, 111 F.3d 129, 1997 WL 173225 (4th Cir. April 11, 1997) (unpublished).  In that case, the Fourth Circuit affirmed a district court's grant of summary judgment on the basis of *res judicata*.  The procedural posture of the *Beazer* case is facially similar to that of the instant case, but there are

important distinctions.  Beazer was the defendant in a CERCLA action brought by Braswell under § 107(a).  Beazer then filed third-party complaints against other PRPs under § 113(f) and sought a declaratory judgment under § 113(g)(2).  While the Braswell lawsuit was ongoing, Beazer entered into a consent order with the EPA.  Beazer moved to dismiss all of its claims in the Braswell action and entered a settlement with Braswell.  After beginning remediation of the site, Beazer then filed a lawsuit as the plaintiff under § 107(a) seeking past response costs and under § 113 seeking a declaratory judgment as to future response costs.  As these claims had been dismissed with prejudice in the Braswell lawsuit, including the claim for a declaratory judgment, the district court granted summary judgment for the defendants in the second lawsuit on the basis of *res judicata.  Id.* at *1-2.

In its discussion of the CERCLA claims and *res judicata*, the Fourth Circuit noted that in *Beazer*, unlike in the case before this court, no § 113(g) declaratory judgment had been issued.  By dismissing its claim for a declaratory judgment with prejudice, the Fourth Circuit concluded Beazer could not later litigate a subsequent claim for a declaratory judgment arising out of the same remediation project.  However, the Fourth Circuit also noted that § 113(g) expressly contemplates that where a declaratory judgment has been entered, a party may "pursue its response costs seriatim," and that after a declaratory judgment apportioning liability has been made "a party may file subsequent actions."  *Id*. at *2.  "[Section] 113(g)(2) clearly allows for actions for 'further costs.'" *Id*. at *3.  *Res judicata* does not bar the within "subsequent" § 113 contribution action because liability in this case has already been apportioned by a prior § 113(g)(2) declaratory judgment.  This action is the type of action for further costs which CERCLA permits a party to pursue "seriatim." *See id*. at *2.

## V. Ripeness

Defendants also argue that PCS's claim for contribution is not yet ripe. Ross and Ashley II argue that PCS cannot recover any of its response costs until it has borne more than its thirty percent (30%) apportioned share under the *Ashley II* judgment. ECF No. 21-1 at 9-10 (Ross); ECF No. 23 at 2 (Ashley II); *see also Ashley II*, 791 F. Supp. 2d at 503-4. Ross and Ashley II complain that PCS has not alleged any definite amount of costs it has incurred, nor has it alleged that it has exceeded its thirty percent share of the cleanup costs.

With respect to PCS's § 113(f) claim, the parties cite the same language from the Supreme Court in *Atlantic Research Corp.*, 551 U.S. 128, and arrive at opposite conclusions. The relevant language is:

> Section 113(f) explicitly grants PRPs a right to contribution. Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." Black's Law Dictionary 353 (8th ed. 2004). Nothing in § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense. The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.

*Atl. Research*, 551 U.S. at 138-39 (citations and quotations as in the original). Ross and Ashley II interpret this paragraph to mean that a contribution action can be maintained only after PCS has paid more than its proportionate share. PCS, on the other hand, contends that because § 113 "permits suit before or after the establishment of common liability," it is entitled to pursue such an action before it has actually paid more than its fair share of the response costs. In keeping with the "traditional

25

sense" of the term contribution, the court concludes that a § 113(f)(1) action cannot be maintained by a party unless that party has "paid more than his or her proportionate share." *Id.* at 138-39.

In the complaint, PCS alleges that it has incurred costs remediating the Site, ECF No. 1 at ¶ 23-26, and has asserted a contribution claim under § 113(f)(1). ECF No. 1 at ¶ 38-40. Read together, these paragraphs raise the inference that PCS is alleging that has incurred more that its proportionate share of the response costs at the Site. Furthermore, counsel for PCS represented to the court at the hearing on the motions to dismiss that PCS has, indeed, incurred "far in excess of its thirty percent of costs."[8] ECF No. 36 at 35:7-16. At the hearing, PCS made an oral motion for leave to amend the complaint to "establish plainly" that it has exceeded its thirty-percent share of costs. Although the complaint plausibly alleges that PCS has incurred more than its proportionate share of costs, leave to amend the complaint to more clearly allege that fact is hereby granted. Amendment must be made within seven days of the date of this order. The court will not dismiss PCS's § 113(f)(1) claim at this stage on the basis that PCS failed to definitively allege that it has incurred more than its thirty percent share of the remediation costs.

─────────────────

[8] At the hearing on the motions to dismiss, counsel for PCS said:

> With regard to the issues as to whether we have incurred 30 percent of the cost. [Counsel for Ashley II] has suggested the cleanup has not been completed and implied that we haven't yet incurred 30 percent of the costs. In fact, the bulk of the remediation work requires the removal of dirty dirt from the site and replacement of that with clean backfill. That is scheduled to be completed this week. So there is no question that PCS has today standing in court incurred far in excess of its 30 percent of costs.

ECF No. 36 at 35:7-16.

## VI. Conclusion

For the foregoing reasons, PCS's claim for relief pursuant to § 107(a) and its claim for relief via an implied right of action under § 107(a) are **dismissed**. The motions to dismiss, ECF Nos. 20-23, are, therefore, **granted in part and denied in part** consistent with this opinion. PCS's oral motion to amend the complaint is **granted**.

**IT IS SO ORDERED.**

 s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Court Judge

May 8, 2015
Columbia, South Carolina

27